PHILLIP D. LAIRD, ET AL., trading as Laird and Company, v. THE EMPLOYERS LIABILITY ASSURANCE CORPORATION, LIMITED, OF LONDON, ENGLAND, a corporation of Great Britain.

*(March* 18, 1941.)

LAYTON, C. J., RODNEY and TERRY, J. J., sitting.

*Southerland, Berl, Potter and Leahy* for plaintiff.

*Logan and Duffy* for defendant.

Superior Court for New Castle County, January Term, 1941.

LAYTON, Chief Justice:

The plaintiffs conduct a stock brokerage business. The defendant insured them against losses arising from having sold as agent or broker for another any securities, as defined in the policy, "which shall have been forged, counterfeited, raised or otherwise altered, or lost or stolen".

Francis I. duPont & Co. delivered to Walls & Company certificates for 200 shares of duPont common stock properly endorsed for transfer, and received its check for the purchase price. Walls & Company, although it did not have sufficient funds in the bank on which the check was drawn to honor its check, nevertheless delivered the certificates to the plaintiff, an innocent third party for sale, and the proceeds were credited to its account. The plaintiff was compelled to deliver the shares to carry out its commitment. E. I. duPont de Nemours & Co. filed its bill of interpleader against the plaintiffs and Francis I. duPont & Co., and the result was an adjudication that the shares were the property of the plaintiffs. In the interpleader suit certain expenses were incurred by the plaintiffs, which are the subject matter of this action.

The question centers on the meaning of the word "stolen". If, fairly viewed, it was intended to cover losses arising from the plaintiffs having sold as agent or broker securities obtained by cheats, swindling or general dishonesty, the defendant would be liable. On the other hand, if the word "stolen" was intended to cover losses occurring

through the sale of securities obtained by larceny, the de-defendant would not be liable on its engagement.

■ ■ The plaintiff's argument is that the word "steal" has no particularly technical significance, but rather is a word having many connotations and implications; and, as commonly used, it denotes general dishonesty involving moral turpitude. Accordingly, the principle of construction is invoked that where the party to a contract, and particularly to a contract of insurance, in selecting the language, makes use of an equivocal word or phrase, that construction will be given which is most unfavorable to the insurer, and most favorable to the insured. The general principle is well settled in this State. *Holtz v. New York Life Ins. Co.*, 7 *W. W. Harr.* (37 *Del.*) 1, 179 *A.* 497; *Radio Corporation v. Philadelphia Storage Battery Co., Del. Sup.*, 6 *A. 2d* 329. But it is equally well settled that where there is no ambiguity in the language of a contract it is beyond the reach of rules of construction; and the courts cannot change or ignore the language of a contract merely to avoid hardships or to meet special circumstances against which the parties have not protected themselves.

■ ■ The rule, supported as we think by the great weight of authority, is that words such as stealing, theft, robbery and pilferage should be given their usual and ordinary meaning, unless there is something in the context that requires a different construction. *Couch, Insurance, Vol.* 5, 4202; and the authorities quite generally held that the word "stolen" ordinarily imports larceny or theft. 59 C. J. 1223, and cases cited.

■ Our own courts have frequently referred to stealing as synonymous with larceny. See *State v. Dredden*, 1 *Marv.* 522, 41 *A.* 925; *State v. Carr*, 4 *Penn.* 523, 57 *A.* 370. On the other hand, fraud is a most compre-

hensive term embracing all of the varied means which the mind of man can devise to gain advantage by false representations or concealment; and the word has been defined as meaning any false representation, deceit, device or artifice used by one person with intent, or for the purpose of deceiving or misleading another to his injury. *Mears & Son v. Waples,* 3 *Houst.* 581.

The securities which the plaintiffs sold and thereby were put to expense of litigation were obtained by Walls & Company by and through the issuance of a worthless check, a specific offense under the statute, § 5218, *Rev. Code* 1935. The evil of drawing and issuing checks on banks in which the drawer has no funds, or insufficient funds, had been long recognized; and the statute was enacted to protect the public against this form of cheat. Manifestly the obtaining of property by giving to the seller a worthless check is not larceny; the giving of a check on a bank where the drawer has no funds or insufficient funds, and has made no arrangements for the honoring of the check, is a species of false pretense. *State v. Vandenburg,* 9 *W. W. Harr.* (39 *Del.*) 498, 2 *A.* 2d 916. It is an offense not nearly so akin to larceny as is embezzlement. It is a fraud, of course, but it is not stealing.

In the contract of insurance the defendant corporation contracted to indemnify against losses which might be incurred by them in the sale as agent or broker of securities which had been forged, counterfeited, raised or otherwise altered, or stolen. Each of the adjectival words conveys a meaning precise and intelligible. The circumstances of liability are specifically stated without qualification. The terms of the contract are clear and unambiguous. They offend no rule of law or public policy, for clearly, an insurer may limit or circumscribe his liability. No doubt the plain-

tiffs could have protected themselves against losses arising from the sale of securities obtained through embezzlement, false pretense or dishonest means in general; but it is quite clear that they found sufficient protection in the especially enumerated situations among which was not securities obtained through that kind of false pretense known as the issuance of a worthless check. However careful the courts should be to hold insurers strictly to their engagements by the application of rules of construction, yet they cannot make a better contract for the insured by increasing the liability of the insurer.

The authorities cited by the plaintiffs are not convincing. Generally, they recognize the rule that the natural and obvious meaning of the word "steal" is a taking in circumstances amounting to larceny, but lay down the admitted principle that the word may be so qualified by accompanying words as to show that the word was intended to have a broader significance.

*Commonwealth v. Kelley,* 184 *Mass.* 320, 68 *N. E.* 346, turned on the statutory definition of stealing, or larceny as including all forms of larceny, criminal embezzlement and obtaining by criminal false pretenses. *United States v. Stone,* (*C. C.*) 8 *F.* 232, 234, arose under a special statute making liable to prosecution any person "who plunders, steals, or destroys any money, goods [etc.] belonging to any vessel in distress, or wrecked". It was expressly said that the offence was purely statutory, and that the Court was not administering the common or state statutory law of larceny. The case is really more of an authority for the defendant, for the Court said, "If congress had said that every person who shall steal goods belonging to a wreck, using no other words, I should probably hold it to denounce only acts constituting larceny at common law * * *".

*Thompson v. United States,* (2 *Cir.*) 256 *F.* 616; *United States v. Faulkenhainer,* (*C. C.*) 21 *F.* 624, and *United States v. Trosper,* (*D. C.*) 127 *F.* 476, are illustrations of the same principle. The statutes in those cases were designed to protect the postal service. The purpose of the statute and the language accompanying the word "steal" plainly indicated that it was not used as synonymous with larceny at common law. *Buxton v. International Indemnity Co.,* 47 *Cal. App.* 583, 191 *P.* 84, is another illustration. There the word steal was used in connection with a conditional buyer of an automobile. Unless it were held to cover the case of a wrongful conversion by a vendee having lawful possession, it would be meaningless.

In *City Trust, etc., Co. of Philadelphia v. Lee,* 204 *Ill.* 69, 68 *N. E.* 485, the insurer guaranteed the insured against "dishonesty or any act of fraud * * * amounting to larceny or embezzlement". The Court held that the phrase, "amounting to larceny or embezzlement", did not qualify the word "dishonesty", and that the appellant was liable even though the conversion did not amount to larceny or embezzlement. In *National Surety Co. v. Williams,* 74 *Fla.* 466, 77 *So.* 212, it was disinctly held that the evidence showed a misappropriation of funds within the obligation of the insurer to indemnify against loss through "fraud and dishonesty including larceny or embezzlement, forgery and misappropriation of funds".

In *Illinois Surety Co. v. Donaldson,* 202 *Ala.* 183, 79 So. 667, 670, the engagement was to indemnify the employer against pecuniary loss sustained by it through "any act of larceny or embezzlement upon the part of the employe in the performance of the duties of the office or position * * * as such duties have been, or may be hereafter stated in writing". The question of fact seemed to be whether the

employee had, in strictness, been guilty of embezzlement. Two members of the Court thought that he had not, and were of opinion that the loss was not within the comprehension of the words "larceny" or "embezzlement". A majority of the Court, upon the authority of *Champion Ice Mfg. & Cold Storage Co. v. American B. & T. Co.*, 115 *Ky.* 863, 75 *S. W.* 197, 103 *Am. St. Rep.* 356, held that the words were generic terms to indicate dishonest and fraudulent breach of duty on the part of the employee. In *Illinois Automobile Ins. Exch. v. Southern Motor Sales Co.*, 207 *Ala.* 265, 92 *So.* 429, 24 *A. L. R.* 734, however, the same court held that the word "theft" in a policy of indemnity against losses which might be suffered by automobile owners was synonymous with larceny, and that where an automobile owner suffered loss through false pretenses the insurer was not liable.

In *Champion Ice Mfg. & Cold Storage Co. v. American B. & T. Co.*, *supra,* the bond was conditioned to indemnify the employer for such pecuniary loss as he might sustain by any act of fraud or dishonesty amounting to larceny or embezzlement, committed by the employee in the performance of his duties as bookkeeper. The employee converted his employer's money and converted to his use the proceeds of fraudulently altered checks. After holding that a part of the loss at least was caused by acts of embezzlement, and as to this the insurer's loss was fixed by the terms of the bond, the Court went on to say that it was not necessary, in order to fix the liability of the insurer, that the insured should produce such proof as would convict the employee of the crime of larceny or embezzlement as defined by the laws of Kentucky, for the terms "larceny" and "embezzlement" in the policy sued on were generic terms to indicate that dishonest and fraudulent breach of duty on the part of the employee to account to his employer for any money or prop-

erty that might come into his hands. In *McKenzie v. Travelers' Fire Ins. Co.*, 239 *Ky.* 227, 39 *S. W. 2d* 239, however, the word "theft" in an automobile theft policy was held to be a felonious taking with the intent to convert to the use of the taker without the consent of the owner, and that a loss sustained by taking an automobile without the owner's consent and wrecking it was not within the embrace of the policy.

Courts, we think, should guard against the temptation to hold indemnitors to obligations not fairly within the terms of their engagements. It is not the function of the courts to act as guardians or committees for those who seek indemnity against possible loss. Coverages may be broad and general as against fraud or dishonesty in general, or they may be narrow and specific. The great weight of authority, supported as we think by better reasoning and considerations of justice, ascribes to the word "steal" and cognate words their usual meaning in law unless the context is such as to give to them a more comprehensive meaning. See *Darling v. Clement*, 69 *Vt.* 292, 37 *A.* 779. Among the many cases so holding are *Cedar Rapids Nat. Bank v. American Surety Co.*, 197 *Iowa* 878, 195 *N. W.* 253; *Chicago F. & M. Ins. Co. v. Fidelity & D. Co.*, 41 *Ariz.* 358, 18 *P. 2d* 260; *Royal Ins. Co. Ltd. v. Jack*, 113 *Ohio St.* 153, 148 *N. E.* 923, 46 *A. L. R.* 529; *Gunn v. Globe & R. Fire Ins. Co.*, 24 *Ga. App.* 615, 101 *S. E.* 691; *Van Vechten v. American Eagle Fire Ins. Co.*, 239 *N. Y.* 303, 146 *N. E.* 432, 38 *A. L. R.* 1115.

In the contract of indemnity in question the word "stolen" is not qualified by the context, and it must be given its usual and ordinary meaning. The loss did not result from larceny or theft, but through a distinct species of fraud; and we are not allowed, we think, to speculate that

the parties, in fact, intended that the protection of the policy to be extended to losses incurred in the sale of securities obtained by any and all fraudulent devices and artifices.

Judgment will be entered for the defendant.